**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
E-Mail: ltfisher@bursor.com
        jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (*Pro Hac Vice* Forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
E-Mail: pfraietta@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCILA BAPTISTE and FREDERICK RAMOS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>APPLE INC.<br><br>                    Defendant. | Case No. 4:22-cv-02888-HSG<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED

Plaintiffs Lucila Baptiste and Frederick Ramos ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendant Apple Inc. ("Apple" or "Defendant") for its unlawful retention of Plaintiffs' and its other New York and Minnesota customers' personally identifiable information, including their names, addresses, credit card information, and video rental history in violation of the New York Video Consumer Privacy Act, N.Y. General Business Law ("GBL") §§ 670-675 ("NYVCPA") and Minnesota's M.S.A. § 325I.01-03 (the "Minnesota Statute").

2. Apple is a leading technology company that rents videos for streaming to consumers through its iTunes platform.

3. Apple maintains a digital record system that details the rental histories of every customer that rents a video from iTunes.

4. Apple also maintains records containing its customers' billing addresses.

5. As a result, Apple maintains a digital dossier on millions of consumers throughout New York and Minnesota. These records contain not only its customers' credit card numbers and billing/contact information, but also a detailed account of its customers' video rental histories.

6. In recognition of the fact that companies who rent digital media – like Apple – must collect certain confidential and sensitive consumer information with respect to personal viewing habits, New York and Minnesota law requires such companies to "destroy personally identifiable information as soon as practicable." GBL § 673(5); M.S.A. § 325I.02(6).

7. However, in direct contravention of the protections afforded to New York and Minnesota consumers under the NYVCPA and the Minnesota Statute § 325I.02(6), Apple maintains and stores its customers' names, credit card numbers, billing and contact information, and most importantly, sensitive video rental histories for an indefinite period of time.

8. Accordingly, Apple has knowingly retained the "personally identifiable information" and sensitive video rental histories of millions of New York and Minnesota consumers, in violation of New York and Minnesota law.

9. Plaintiffs bring this action on behalf of themselves and two separate classes of all people in New York and Minnesota whose personally identifiable information and sensitive video rental histories were retained by Apple.

**THE PARTIES**

10. Plaintiff Lucila Baptiste lives and is domiciled in Brooklyn, New York.

11. Ms. Baptiste has an iTunes account, and has rented videos through her iTunes account.

12. On April 11, 2020, Ms. Baptiste rented a movie from Apple, through iTunes.

13. In connection with that rental, Apple collected Ms. Baptiste's name, address, and credit card information.

14. As of March 18, 2022, Ms. Baptiste iTunes's account history still displayed the title of the video she rented, as well as the date she rented it and the price she paid for it.

15. Plaintiff Frederick Ramos lives and is domiciled in Eden Prairie, Minnesota.

16. Mr. Ramos has an iTunes account, and has rented videos through his iTunes account.

17. On June 28, 2011, Mr. Ramos rented a movie from Apple, through iTunes.

18. In connection with that rental, Apple collected Mr. Ramos' name, address, and credit card information.

19. As of April 2022, Mr. Ramos' iTunes's account history still displayed the title of the video he rented, as well as the date he rented it and the price he paid for it.

20. Defendant Apple Inc. is a California corporation with its headquarters in Cupertino, California. Apple does business throughout California and New York.

**JURISDICTION AND VENUE**

21. Defendant admitted that jurisdiction and venue are satisfied here when it removed this matter from state court.

## STATEMENT OF FACTS

### *The Federal Video Privacy Protection Act and Digital Dossiers*

22.      The desire to keep video rental history records private led Congress to enact the Video Privacy Protection Act of 1988, 18 U.S.C. § 2710 ("VPPA").  Inspired by the release of video rental records of Supreme Court Justice Nominee Robert H. Bork and his family, Congress promulgated the Act to explicitly preserve United States citizens' right to privacy in their video rental histories.

23.      When the VPPA was introduced, Senator Paul Simon noted that:
There is no denying that the computer age has revolutionized our world.  Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives.  Our children learn through computers.  We bank by machine.  We watch movies in our living rooms.  These technological innovations are exciting and as a nation we should be proud of the accomplishments we have made.  Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy.  The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before.  *Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes.  These records are a window into our loves, likes, and dislikes*.

S. Rep. No. 100-599 at 7-8 (1988) (emphasis added).

24.      One of the original drafters of the VPPA, Senator Patrick Leahy, remarked that "the trail of information generated by every transaction is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance."  S. Rep. No. 100-599 at 8 (1988).

25.      In recognition of the sensitivity of the video renting information, the VPPA requires video tape service providers, like Apple, to destroy "personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected … ."  18 U.S.C. § 2710(e).

26.      However, the VPPA differs from the NYVCPA and Minnesota Statute § 325I.02(6) in that it only provides a private right of action for the wrongful *disclosure* of personally identifiable

---

information, and not failure to destroy it.  *See* 18 U.S.C. § 2710(c) (providing private right of action for a "violation of this section" immediately after the disclosure prohibitions in section (b), but not listing the destruction requirements until section (e)).

***The New York Video Consumer Privacy Act and Minnesota Statute § 325I.02(6)***

27.     On the heels of Congress having passed the VPPA, the New York Legislature passed the NYVCPA in 1993 "to protect the personal privacy of individuals and their families who rent video cassette tapes and movies and similar audio visual materials."  GBL § 671.

28.     In his sponsor memorandum, Assemblyman Anthony J. Genovesi noted:

> Video lists have enormous commercial utility, which adds to the likelihood that an individual's entertainment preferences will be disclosed.  Mailing lists are easily devised based on categorizing an individual's viewing habits as documented by video retail establishments' records.  For example, catalog companies and direct mail sales companies are naturally interested in obtaining lists of people who rent children's films, physical fitness films, adventure films, or adult films.

Exhibit A, Sponsor Memo at 3.

29.     In furtherance of those concerns, like the VPPA, the NYVCPA requires that video tape service provides, like Apple, "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected … ."  GBL § 673(5).

30.     However, unlike the VPPA, the NYVCPA explicitly provides a private right of action to enforce that statutory requirement.  *See* GBL § 675(1).

31.     Specifically, under the NYVCPA, the private right of action is located at the end of the Act and extends to all "violation[s] of this *article*," which refers to Article 32 of the General Business Law, *i.e.*, the NYVCPA.

32.     This deviation from the VPPA is not an accident.  Indeed, Assemblyman Genovesi specifically noted in his sponsor memorandum that due to the shortcomings of the VPPA, "a separate state law is needed in New York to give her citizens meaningful protection from unwanted intrusions."  Ex. A, Sponsor Memo at 3.

33.    Minnesota's law governing video rental records are similar to the NYVCPA.

34.    Minnesota law has the same language found in the NYVCPA, requiring video tape service provides, like Apple, to "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected … ."  M.S.A. § 325I.02(6).

35.    And, like NYVCPA, the Minnesota Statute explicitly provides a private right of action to enforce that statutory requirement.  *See id.* at § 325I.03.

36.    Specifically, under the Minnesota Statute, "a consumer who prevails or substantially prevails in an action brought under this section is entitled to a minimum of $500 in damages, *regardless of the amount of actual damage proved*, plus costs, disbursements, and reasonable attorney fees."  *Id.* (emphasis added).

37.    As a result, by its plain terms, Minnesota Statute § 325I.03 affords greater protections than does VPPA.

***A Brief Overview of Renting Videos Through iTunes***

38.    iTunes allows consumers to rent videos to instantly stream on their devices.

39.    Consumers must first create an account with iTunes which requires them to input their name, date of birth, email address, billing address, and credit card information.

40.    After creating an iTunes account, renting a video through iTunes is a three-step process.  First, the customer searches iTunes's selections by using its interface.  Second, after the customer has identified a video that she wishes to rent, the customer clicks that video and then clicks the "rent" button, which prompts her to enter her iTunes account username and password.  Third, the customer enters her iTunes account username and password and clicks "rent," thereby charging the credit card on file with her iTunes account and renting the video.

41.    Once the video is rented it is accessible to the customer in the "rented" section of the iTunes interface.

42.    The customer must watch the video within 30 days of the rental and has 48 hours from first viewing the video to complete it.

43.    After 30 days of the rental, or after 48 hours from first viewing the video, whichever

1  comes earlier, the video is no longer accessible to the customer.

2      44.    At no time does Apple obtain the consent of its customers to retain their personally

3  identifiable information.

4      45.    Apple requires customers to use only credit or debit cards to rent videos from iTunes.

5      46.    iTunes's terms and conditions provide that all transactions are final.

6      47.    Apple will only offer a refund for a video rental if technical problems prevent or

7  unreasonably delay delivery of the video, and only if requested by the customer within 90 days of

8  the rental.

9              ***Apple Systematically Violates the NYVCPA and Minnesota Statute § 325I.02(6)***

10     48.    With every rental transaction, Apple collects, stores and maintains its customers'

11  name, credit and debit card information, billing address, and video rental history for an indefinite

12  period of time.

13     49.    The video rental histories that Apple stores include every video that the customer has

14  ever rented from Apple through iTunes, as well as information which identifies the customer as

15  having requested or obtained specific video materials or services.

16     50.    In light of the fact that its customers' rental transactions are necessarily completed

17  within 30 days from the date of rental, and given Apple's policy not to provide refunds for charges

18  that are over 90 days old, Apple systematically violates New York and Minnesota law by storing

19  and maintaining its customers' "personally identifiable information," as that term is defined by the

20  statutes, for longer than 90 days.

21     51.    According to Apple, the May 19, 2019 version of Apple's Media Service Terms and

22  Conditions state that Apply may recommend content based on a consumer's prior video rental

23  history.

24     52.    In reality, Apple does not retain video rental viewing history for the purpose of

25  recommending other content.

26     53.    Alternatively, to the extent that Apple utilizes rental viewing history to make

27  recommendations, Apple utilizes a user's recent rental viewing activity, not rentals that occurred a

28  year or more in the past.

54.     After a year, video rental history is no longer necessary for making recommendations.

55.     Apple does not retain years-old video rental records for network security purposes.

56.     Retaining video rental records that are older than a year is not necessary for network security purposes.

57.     Apple does not retain years-old video rental records to assist with the identification of users.

58.     Retaining video rental records that are older than a year is not necessary to identify users.

59.     Apple does not retain years-old video rental records for the purpose of sending important notices, such as communications about purchases and changes to Apple's terms and conditions.

60.     Retaining video rental records that are older than a year is not necessary to send important notices, such as communications about purchases and changes to Apple's terms and conditions.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff Baptist seeks to represent a class of all New York residents who (a) rented a video from Apple through iTunes wherein (b) Apple retained for more than 90 days their personally identifiable information, including information that identifies the person as having requested or obtained specific video materials or services, and (c) without their consent (the "New York Class").

62.     Plaintiff Ramos seeks to represent a class of all Minnesota residents who (a) rented a video from Apple through iTunes wherein (b) Apple retained for more than 90 days their personally identifiable information, including information that identifies the person as having requested or obtained specific video materials or services, and (c) without their consent (the "Minnesota Class").

63.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes number in the millions.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may

be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

64.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendant has violated New York or Minnesota law by storing and maintaining personally identifiable information, including video rental histories for longer than 90 days; and whether Class members are entitled to statutory damages for the aforementioned violations.

65.    The claims of the named Plaintiffs are typical of the claims of the Classes because the named Plaintiffs, like all other Class members, rented videos from Apple through iTunes and had their personally identifiable information, including video rental histories stored and maintained by Apple for longer than 90 days.

66.    Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

67.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

68.     Plaintiffs bring their claims in this action individually and on behalf of members of the Classes against Defendant.

**COUNT I**
**Violation of the New York Video Consumer Privacy Act,**
**N.Y. GBL §§ 670-675**

69.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

70.     Plaintiff Baptist brings this claim individually and on behalf of the members of the proposed New York Class against Defendant.

71.     Apple is a "video tape service provider" as defined by the NYVCPA, because it "[e]nage[s] in the business of rental of prerecorded video cassette tapes or similar audio visual materials."  GBL § 672(4).

72.     Plaintiff Baptist is a "consumer" as defined by the NYVCPA, because she is a "renter … of goods or services from a video tape service provider."  GBL § 672(1).

73.     The NYVCPA requires video tape service providers "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected … ."  GBL § 673(5).

74.     The NYVCPA defines "personally identifiable information" as "any information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  GBL § 672(1).

75.     As Apple's customer video rental transactions are completed within 30 days of the rental (as the video is no longer accessible to the customer after that time), and Apple does not provide refunds for charges that are more than 90 days old, it is not necessary for Apple to store and maintain Plaintiff' and the Class's personally identifiable information and personal video rental histories for longer than 90 days.

76.     Accordingly, and in violation of GBL § 673(5), Apple has failed to destroy its customers' personally identifiable information as soon as practicable after it was no longer necessary for the purpose for which it was collected.

77.    Nonetheless, Apple has stored and maintained Plaintiff Baptist's personally identifiable information, as that term is defined by the NYVCPA, for well over 90 days since she rented a video from Apple, through iTunes, on April 11, 2020.

78.    Further, Apple does not have a policy in place to timely destroy "personally identifiable information," as required by the NYVCPA.

79.    Pursuant to GBL § 675, Plaintiff Baptist and the New York Class have been injured by the violations of GBL § 673(5), and seek damages of not less than $500 each, regardless of the amount of actual damage proved, plus costs, disbursements, and reasonable attorneys' fees.

<u>COUNT II</u>
**Violation Minnesota Statute M.S.A. § 325I.01-03**

80.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

81.    Plaintiff Ramos brings this claim individually and on behalf of the members of the proposed Minnesota Class against Defendant.

82.    Apple is a "videotape service provider" as defined by M.S.A. § 325I01(5), because it "[e]nage[s] in the business of rental of prerecorded videocassette tapes or similar audiovisual materials."

83.    Plaintiff Ramos is a "consumer" within the meaning of the statute because he is a "renter … of goods or services from a videotape service provider." *Id.* at § 325I01(2).

84.    The Minnesota Statute requires video tape service providers "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected … ."  M.S.A. § 325I02(6).

85.    The Minnesota Statute defines "personally identifiable information" as "information that identifies a person as having requested or obtained specific video materials or services from a videotape service provider."  M.S.A. § 325I01(3).

86.    As Apple's customer video rental transactions are completed within 30 days of the rental (as the video is no longer accessible to the customer after that time), and Apple does not

1  provide refunds for charges that are more than 90 days old, it is not necessary for Apple to store and

2  maintain Plaintiff's and the Class's personally identifiable information and personal video rental

3  histories for longer than 90 days.

4        87.    Accordingly, and in violation of Minnesota law, Apple has failed to destroy its

5  customers' personally identifiable information as soon as practicable after it was no longer

6  necessary for the purpose for which it was collected.

7        88.    Nonetheless, Apple has stored and maintained Plaintiff Ramos's personally

8  identifiable information for well over 90 days since he rented a video from Apple, through iTunes,

9  in June 2011.

10        89.    Further, Apple does not have a policy in place to timely destroy "personally

11  identifiable information," as required by Minnesota law.

12        90.    Plaintiff Ramos and the Minnesota Class have been injured by the violations of

13  M.S.A. § 325I01, and seek damages of not less than $500 each, regardless of the amount of actual

14  damage proved, plus costs, disbursements, and reasonable attorneys' fees.

15  <u>**PRAYER FOR RELIEF**</u>

16      WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek

17  judgment against Defendant, as follows:

18      a.    Determining that this action is a proper class action;

19      b.    For an order certifying the New York and Minnesota Classes, naming Plaintiffs as

20               the representative of their respective state classes, and naming Plaintiffs' attorneys as

21               Class Counsel to represent the New York and Minnesota Classes;

22      c.    For an order declaring that the Defendant's conduct violates the statutes referenced

23               herein;

24      d.    For an order finding in favor of Plaintiffs and the New York and Minnesota Classes

25               on all counts asserted herein;

26      e.    For statutory damages in amounts to be determined by the Court and/or jury;

27      f.    For prejudgment interest on all amounts awarded;

28

g.      For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and

disbursements, expenses, and costs of suit.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs hereby demand a trial by jury of all issues so triable.


Dated: June 28, 2022                                    Respectfully submitted,

                                                        **BURSOR & FISHER, P.A.**

                                                        By:_____/s/ Joel D. Smith_____
                                                                Joel D. Smith

                                                        L. Timothy Fisher (State Bar No. 191626)
                                                        Joel D. Smith (State Bar No. 244902)
                                                        1990 North California Blvd., Suite 940
                                                        Walnut Creek, CA 94596
                                                        Telephone: (925) 300-4455
                                                        Facsimile:  (925) 407-2700
                                                        Email: ltfisher@bursor.com
                                                               jsmith@bursor.com

                                                        **BURSOR & FISHER, P.A.**
                                                        Philip L. Fraietta (*Pro Hac Vice* Forthcoming)
                                                        888 Seventh Avenue
                                                        New York, NY 10019
                                                        Telephone: (646) 837-7150
                                                        E-Mail: pfraietta@bursor.com

                                                        *Attorneys for Plaintiffs*

**EXHIBIT A**

5904-A                    ①        A 5904-A

Assemblyman Anthony J. Genovesi
New York State Assembly
MEMORANDUM IN SUPPORT OF LEGISLATION
submitted in accordance with Assembly Rule III, Section 1 (e)

Bill Number: Assembly 5904    Senate ____    ____ Memo on original draft

                                            ____ Memo on amended bill

Sponsors: Assemblymembers    Anthony J. Genovesi

            Senators _____

TITLE:

An act to amend the general business law, in relation to protecting the
privacy of consumers renting or purchasing video cassette tapes or similar
audio visual materials.

PURPOSE OR GENERAL IDEA OF BILL:

The purpose of this bill is to protect the personal privacy of consumers
who purchase or rent prerecorded video cassette tapes or similar
audiovisual materials by prohibiting public disclosure of information that
could reveal the identity of such individuals except with the consumer's
consent or pursuant to certain exceptions, such as a court order.
Exceptions to the prohibition are designed to avoid unreasonably
restricting the ability of video retail establishments to retain such
information as is needed to carry on their businesses.

SUMMARY OF SPECIFIC PROVISIONS:

This bill would add a new Article 31 to the General Business Law, entitled
the Video Consumer Privacy Act. The bill would prohibit video tape service
providers from disclosing to any person personally identifiable information
concerning the consumer, including information which identifies a person as
having rented or obtained specific video materials or services from a video
tape service provider.

Exceptions to the general disclosure prohibition would be made where the
disclosure is: to the consumer or is made with the informed, written
consent of the consumer given at the time the disclosure is sought; to any
person if the disclosure is incident to the ordinary course of business of
the video tape service provider as defined in the bill; to a grand jury
pursuant to a grand jury subpoena; pursuant to a court order in a civil
case upon a showing of compelling need or in a criminal case upon a showing
of legitimate need and upon motion and an opportunity to appear to the
consumer; to a law enforcement agency pursuant to a lawfully obtained
warrant; or to a court pursuant to a civil action for conversion commenced
by the video tape service provider or to enforce collection of fines for
overdue or unreturned video tapes, and then only to the extent necessary to
establish the fact of the rental.

000014

*A 5904-A*

②

Old video consumer records must be destroyed within one year of the information no longer being necessary or requested.

Violators of the bill's provisions would be liable to the consumer for damages and could also be subject to an action brought by the Attorney General for injunctive relief and a fine of up to $1,000.

EFFECTS OF PRESENT LAW WHICH THIS BILL WOULD ALTER:

Adds a new Article 31 to the General Business Law.

JUSTIFICATION:

Retail establishments that devote all or part of their business to the sale or rental of pre-recorded video tapes and movies have become big business. Almost half of all U.S. households are equipped with a video cassette recorder. Americans spend hundreds of millions of dollars on renting and buying movies for home viewing. Thousands of retail outlets rent and sell video cassettes both to people who enroll as "club members" and to members of the public generally. Such establishments commonly keep detailed computerized records of the names and addresses of individual customers along with the titles of the movies they have rented or purchased. Thus, an individual's entire history of rentals or purchases of video tapes or movies for personal entertainment can be obtained at the press of a button.

The unauthorized release of such information raises serious privacy and First Amendment considerations. The problem was graphically illustrated during the course of two recent highly-publicized public proceedings: When Lieutenant Oliver North took the witness stand in the Iran-Contra hearings, a list of movies rented by him and his family was obtained and made public. Similarly, when Judge Robert Bork was the subject of a controversial hearing for a Supreme Court judgeship, his tastes in movies were disclosed and published by a Washington weekly newspaper, which printed a list of 146 titles of videos rented over the prior year and a half by himself or family members.

Historically, during the McCarthy era, investigators obtained lists of books checked out of public libraries and used them against a number of people. Today in New York State, persons borrowing books from libraries are protected from such conduct by CPLR 4509, which prohibits the dissemination of personally identifying details contained in library circulation records except under specific circumstances. Similarly, personally identifiable information concerning subscribers of cable television channels is protected from dissemination under federal law by the Cable Privacy Protection Act, 47 USC 551 et seq.

Video retail establishment records containing personally identifying information certainly present the same potential for abuse as library and cable television records. The Federal government recognized the privacy problems presented by the video age by enacting the Video Privacy Protection Act of 1988, P.L. 100-618. Unfortunately, that law is flawed in that it allows disclosure of personally identifiable information to any

*A5904-A*

③

person if the disclosure is only of the name and address of the consumer
and the video consumer has been given the  opportunity to prohibit such
disclosure. An even more serious flaw is the new law's exception for
commercial mailing lists and similar purposes: "the subject matter of such
materials may be disclosed if the disclosure is for the exclusive use of
marketing goods and services directly to the consumer." (18 U.S.C. 2710(b)
(2) (D) (ii), P.L. 100 - 618 [1988]).

Video lists have enormous commercial utility, which adds to the likelihood
that an individual's entertainment preferences will be disclosed. Mailing
lists are easily devised based on categorizing an individual's viewing
habits as documented by video retail establishments' records. For example,
catalog companies and direct mail sales companies are naturally interested
in obtaining lists of people who rent children's films, physical fitness
films, adventure films, or adult films.

The Department of Law has received dozens of complaints from consumers who
have received unsolicited direct mail advertisements for pornographic home
video movies, containing explicit descriptions of the movies' contents and
suggestive pictures. Some of the solicitations were addressed to the
children of the household. It is suspected that a source of these direct
mail companies' access to individuals' name and addresses has been video
clubs, who disclose lists of customers. The Federal law does nothing to
prohibit such use of video establishments' records, since it has a broad
mailing list exception. Thus, a separate state law is needed in New York to
give her citizens meaningful protection from unwanted intrusions and to
cover those video tape service providers which are not engaged in or are
affecting interstate commerce.

This bill would prevent the unauthorized sale or other disclosure of
personally identifiable information concerning a consumer's movie purchases
or rentals. An aggrieved individual could bring a lawsuit under this bill
and obtain a minimum of $500 in damages if successful, along with costs and
attorney's fees. Violation of the act would also subject the violator to an
action for injunctive relief brought by the Attorney General, and to a fine
of up to $1,000 per violation. The bill would ensure that video tape
service providers will be able to pursue normal business operations by
using computerized information as needed for inventory or other legitimate
purposes in-house, or to disclose personally identifiable information with
the express written consent of the consumer.

Consumers should be entitled to view movies and tapes of their own choosing
within their own homes without their personal choices becoming public or
finding their way to a pornographer's mailing list. They should not be put
in the position of self-censorship out of concern over public disclosure of
their choices of video movies. Enactment of this bill would mean that video
consumers could rent or purchase video tapes and movies without fear that
information connecting them or members of their families to any particular
titles could become public or appear on an unwanted mailing list.